UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| G-2 AUTOMATED TECHNOLOGIES, LLC, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:11-CV-3574-B |
| ALECO, INC., | § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Aleco, Inc.'s Motion to Dismiss (doc. 5), filed February 14, 2012. For the reasons set forth below, the Court **GRANTS** Defendant's Motion to Dismiss for lack of personal jurisdiction.

### I.

### BACKGROUND

This action arises out of Aleco, Inc.'s ("Aleco") purported violations of the Texas Deceptive Trade Practices Act involving the sale of press brake machines to G-2 Automated Technologies, LLC ("G-2"). Pl.'s Pet. ¶ 17. Plaintiff G-2 is a limited liability company set up and operating under the laws of Texas. *Id.* at ¶ 2. G-2 manufactures storage solutions, furnishings, and medical and industrial equipment. *Id.* at ¶ 8. Defendant Aleco, Inc. ("Aleco") is a corporation organized in Wisconsin with its sole place of business in Milwaukee County, Wisconsin. Def.'s Br. 3. Aleco sells "used

metalworking equipment and parts." *Id.*

In its Original Petition, G-2 maintained it learned through online searching in October 2010 that Aleco sold manufacturing equipment. Pl.'s Pet. ¶ 9. Thereafter, G-2 e-mailed Aleco inquiring about the machinery Aleco advertised. *Id.* After Aleco filed its Motion to Dismiss, however, G-2 contended it "first contacted Aleco in response to an unsolicited spam e-mail sent by Aleco to G-2 in Texas advertising the two press brakes that G-2 ultimately purchased from Aleco." Pl.'s Resp. Def.'s Mot. Dismiss ¶ 2. Aleco disputes G-2's contention, claiming instead that G-2 established "first contact" through a telephone call to Aleco. Def.'s Br. 3.

According to G-2, it purchased the press brakes based on Aleco's express representations that they "were in good working order" and would run in G-2's facility. Pl.'s Pet. ¶¶ 9-10. Aleco maintains that "[t]he press brake machines were shipped by Aleco to Texas at G-2's request and G-2's expense using a third party shipment company." Def.'s Br. 3. G-2 claims that upon arrival, parts were missing, manuals were not included, and the press brakes did not work. Pl.'s Pet. ¶ 11. G-2 additionally alleges that the function for which the machinery was specifically purchased could not be performed because one of the press brakes was converted into a punch press. *Id.* at ¶ 12. G-2's efforts to repair the press brakes have failed. *Id.*

Accordingly, on October 27, 2011 G-2 filed the instant action in the 191st District Court for Dallas County. On December 28, 2011, Aleco generally denied G-2's material allegations and removed the action to this Court. On February 14, 2012, Aleco filed the present Motion to Dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). That Motion is now ripe for consideration.

## II.

## LEGAL STANDARDS FOR PERSONAL JURISDICTION

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of an action where the Court lacks personal jurisdiction over the defendant. On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proving that a nonresident defendant is subject to the Court's jurisdiction. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir.1999); *Jones v. Petty–Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir.1992). "The Court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir.1985). All conflicts between the facts contained in the parties' affidavits and other documentation must be resolved in the plaintiff's favor. *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003).

In establishing personal jurisdiction, two preconditions must be met: (1) the nonresident must be amenable to service of process under Texas's long-arm statute; and (2) the assertion of jurisdiction over the nonresident must comport with the Due Process Clause of the United States Constitution. *Jones*, 954 F.2d at 1067. Because Texas's long-arm statute has been held to extend to the limits of due process, the Court need only determine whether jurisdiction over the defendant is constitutionally permissible. *Id.* at 1067–68 (citing *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex.1990)). To meet the federal constitutional test of due process, two elements must be satisfied: (1) the defendant must have purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state such that it would reasonably anticipate

being haled into court there; and (2) the exercise of jurisdiction over the defendant must not offend traditional notions of fair play and substantial justice. *Id.* at 1068.

The "minimum contacts" test can be met by contacts giving rise to either specific or general jurisdiction. *Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir.1996). "General personal jurisdiction is found when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial." *Marathon Oil Co. v. Ruhrgas*, 182 F.3d 291, 295 (5th Cir.1999) (citation omitted). Specific jurisdiction exists when the cause of action arises from the nonresident defendant's contacts with the forum state. *Gundle*, 85 F.3d at 205. In either context, the Court considers the totality of the circumstances in conducting the minimum contacts analysis; no single factor is determinative. *Stuart*, 772 F.2d at 1192.

## III.

## ANALYSIS

A. *Minimum Contacts*

Aleco argues in its Motion to Dismiss that this Court lacks both general and specific jurisdiction. G-2 does not specifically address whether the Court has general jurisdiction over Aleco. Moreover, this Court does not find a set of facts that establish general jurisdiction. This Court therefore turns to whether it has specific jurisdiction over Aleco.

In its Motion to Dismiss, Aleco contends that specific jurisdiction is not available because G-2's allegations "do not arise from any activity Aleco purposefully directed into Texas." Def. Br. 1-2. Aleco maintains its contacts with Texas were "random, isolated, or fortuitous"and that "[t]he only contact [it] would have had with Texas in connection with this particular sale is when it was

unilaterally contacted by G-2 about the subject machines and then sold the subject machines to G-2." *Id.* at 7.

In order to establish specific jurisdiction, G-2 must show that Aleco's contacts with Texas emanate from or are directly related to the asserted breach of contract claim. *See Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001) (finding adequate minimum contacts to justify personal jurisdiction based on telephone conversations with plaintiff). In response to Aleco's Rule 12(b)(2) Motion, G-2 argues that this Court has personal jurisdiction over Aleco because Aleco purposefully availed itself of doing business with Texas by first contacting G-2 about products it was selling. Pl.'s Br. Supp. Resp. Def.'s Dismiss 7. As G-2 contends, "if not for Aleco reaching out . . . via its spam e-mail, G-2 would not have known that Aleco had the two press brakes for sale, and would not have purchased the press brakes from Aleco."*Id*. In further support, G-2 alleges that Aleco negotiated the contract with G-2 via e-mail and telephone calls directed to G-2, misrepresented the quality and condition of the machines in an e-mail sent to G-2, accepted money from G-2 via a wire transfer from a bank in Texas, arranged the shipment of the machinery from Aleco in Wisconsin to G-2 in Texas by contacting trucking companies and obtaining bids, loaded the machines on the trucks, and communicated through e-mails with G-2 about G-2's efforts to install the machinery. *Id*. at 7-8.

A single act can establish jurisdiction if it creates a "substantial connection" with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985) (citing *McGee v. Intl. Life Insurance Co.*, 355 U.S., 78 S.Ct. 199, 201, 223 (1957)). Courts have held, however, that "some single or occasional acts" related to the forum may not be sufficient to establish jurisdiction if "their nature and quality and the circumstances of their commission" create only an "attenuated" affiliation with the forum. *Id*. (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945); *World-Wide Volkswagen*

*Corp. v. Woodson*, 100 S.Ct. 559, 568 (1980)).

When evaluating a party's contacts with the forum state, "the quality of the contacts demonstrating purposeful availment is the issue, not their number or pre- or post- agreement communications." *Stuart*, 772 F.2d at 1194. In a Rule 12(b)(2) Motion, "[w]hen the court rules on the motion without an evidentiary hearing, the plaintiff may establish personal jurisdiction by presenting a *prima facie* case that personal jurisdiction is proper, . . . proof by a preponderance of the evidence is not required."*Intl. Truck and Engine Corp. v. Quintana*, 259 F.Supp.2d 553, 556 (N.D. Tex. 2003) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)). A "mere assertion" against a Defendant however, is not sufficient to exercise jurisdiction absent minimum contacts. *Southern Bleacher Co., Inc. v. Husco, Inc.*, No. 7:01-CV-009-R, 2001 WL 497772 at *5 (N.D. Tex. May 7, 2001) (citing *Star Technology, Inc. v. Tultex Corp.*, 844 F.Supp. 295, 299 (N.D. Tex. 1993)).

In this case, G-2 has failed to show the minimum contacts necessary to establish specific jurisdiction. First, based on the evidence as to which party created "first contact," it appears that G-2 initially contacted Aleco. G-2's allegation in its Response to Aleco's Motion to Dismiss that Aleco purposefully availed itself by first contacting G-2 is at odds with its allegation in its Original Petition that, "[t]hrough online searching, G-2 learned that Aleco advertised manufacturing equipment. [G-2] then e-mailed Aleco to inquire directly about the equipment." Pl.'s Pet. ¶ 9. Only after Aleco filed its Motion to Dismiss did G-2 maintain that the transaction with Aleco first arose out of an unsolicited spam e-mail that Aleco sent to G-2 advertising its press brake machines. Pl.'s Resp. Def.'s Mot. Dismiss ¶ 2. As Aleco pointed out, G-2 did not produce one spam e-mail that Aleco sent to G-2 prior to the purchase. Def.'s Reply Br. Supp. Mot. Dismiss 1. Furthermore, G-2 produced e-mails sent by Aleco that provide strong support for the premise that G-2 first contacted Aleco. Pl.'s App.

6-8. In *Southern Bleacher Co., Inc. v. Husco*, the plaintiff alleged that fraudulent misrepresentations were made regarding the performance of a contract to install stadium-style seating and the Court concluded that the allegations were only bald assertions. *Southern Bleacher Co., Inc. v. Husco, Inc.*, No. 7:01-CV-009-R, 2001 WL 497772 at *6. As such, a *prima facie* case was not met. *Id*. Likewise, G-2's conclusory allegations are inadequate to demonstrate a *prima facie* display of personal jurisdiction.

Second, the quality of Aleco's other alleged contacts including telephone and e-mail communication, the arranging of the products' transportation, and acceptance of money via a wire transfer from a Texas bank, are insufficient to establish the minimum contacts needed to subject it to specific jurisdiction in Texas. In a breach of contract case, to determine whether a party established minimum contacts, a court must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . ." *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999). The Fifth Circuit has repeatedly held that "merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction."*Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986); *See, Colwell Realty Investments v. Triple T Inns of Arizona, Inc.*, 785 F.2d 1330, 1334 (5th Cir. 1986).

A party's communication during the formation and performance of a contract among other activities related to the forum state, will not necessarily support the exercise of personal jurisdiction. *Gundle*, 85 F.3d at 205 (citing *Stuart,* 772 F.2d at 1193). For example, in *Holt Oil & Gas Corp. v. Harvey*, where the nonresident defendant engaged in extensive telephone communication with the plaintiff, contracted with the plaintiff, and sent checks to the plaintiff, specific jurisdiction was not found. Likewise, in *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026 (5th Cir. 1983),

where extensive communication took place between the parties, and additional activity included visitations to the forum state and the acceptance of a contract offer in the forum state, personal jurisdiction was not established. As in *Holt Oil* and *Hydrokinetics*, despite being grouped with other alleged contacts, the communication between Aleco and G-2 prior to and during performance of the contract is insufficient to support specific jurisdiction over Aleco.

Transporting materials to the forum state as part of a contract's performance, among other alleged contacts, also will not necessarily be sufficient to establish jurisdiction over a nonresident defendant. *Stuart*, 772 F.2d at 1192-94. In *Loumar v. Smith*, 698 F.2d 759 (5th Cir. 1983), a breach of contract dispute involving airplane parts, where the alleged contacts included advertisements in national periodicals and the shipment of airplane parts to the plaintiff by a common carrier, the Fifth Circuit held that the forum state did not have specific jurisdiction over the defendant. As in *Loumar*, arranging the transportation of the press brake machines from Aleco in Wisconsin to G-2 in Texas, among other alleged activity, does not establish the minimum contacts necessary to establish specific jurisdiction over Aleco.

Although unpublished, *Southern Copper, Inc. v. Specialloy, Inc.*, 245 F.3d 791, 2000 WL 1910176 (5th Cir. 2000) is illustrative. In *Southern Copper*, the plaintiff, a Texas corporation, claimed that part of the shipment of copper-nickel billets it bought from the defendant, an out of state corporation, was defective. *Id.* at *1. Where in that case, the defendant advertised online, communicated with the plaintiff, had no place of business in Texas, and hired an independent shipping carrier to transport the goods to the plaintiff in Texas, the Fifth Circuit affirmed the district court's granting of the defendant's Motion to Dismiss based on a lack of personal jurisdiction. *Id.* at *5. With regards to the contacts most notably referenced by the plaintiff, that the defendant

operated a website accessible to Texans, and called the plaintiff to verify purchase orders and shipping details, the Fifth Circuit held that both activities were insufficient to support the exercise of jurisdiction because the website was passive and used solely for an interested reader to contact the company, and telephone calls "were initiated by both parties." *Id.* at \*3. Here too, there are insufficient minimum contacts to create specific jurisdiction over Aleco. Like the defendant in *Specialloy*, here Aleco advertised products on its passive website, communicated with G-2 during the formation and performance of the contract, had no place of business in Texas, and set up the bidding for the third party transport of the press brake machines to G-2 in Texas.

In *Electrosource, Inc. v. Horizon Battery Technologies, Ltd.*, 176 F.3d 867 (5th Cir.1999), a dispute involving the licensing of an electrical battery that pit the plaintiff, a Texas based licensor, against the defendant, the purported licensee who operated out of India, the Fifth Circuit found that contacts related to defendants activity in the forum state, which included sending employees from India to Texas six times for in-depth negotiations and planning, and contemplating the plaintiffs training of the defendants employees in Texas, constituted the defendants commitment to future contacts in the forum state. Such evidence, this Court held, should have led the defendant to reasonably anticipate being haled into court in the forum state and was sufficient to establish the minimum contacts necessary for personal jurisdiction over the non-resident defendant. *Electrosource*, 176 F.3d at 872.

Here, in stark contrast to *Electrosource*, the transaction between G-2 and Aleco centered on a single transaction. Indeed, a review of the provided documentation indicates no plans by Aleco to specifically target G-2 or any Texas corporation. Moreover, unlike in *Electrosource* where, the defendant negotiated and entered into an agreement in the forum state, and "began the process of

training, designing, and preparation" in the forum state, here representatives from Aleco did not visit the forum state during the negotiation or performance stages of the contract. *Id.* at 873.

In this case, where the contacts at issue arise out of a single contract, the totality of the circumstances does not indicate that Aleco established minimum contacts with Texas adequate to exercise personal jurisdiction.

*B. Fair Play and Substantial Justice*

Considering that Aleco does not have minimum contacts with Texas, this court need not determine whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 329 n. 20 (5th Cir. 1996) ("Because we find that the first due process condition of minimum contacts was not satisfied, we need not address whether the exercise of personal jurisdiction in this case would offend traditional notions of fair play and substantial justice").

## IV.

## CONCLUSION

For the aforementioned reasons, Aleco's Motion to Dismiss for lack of personal jurisdiction is **GRANTED**.

**SO ORDERED.**

**DATED: JUNE 21, 2012**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE